## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## NORTHERN DIVISION
## AT BALTIMORE

| | | |
|---|---|---|
| ROBERT SCHWARTZ, | § | |
| 211 Mallard Court | § | |
| Havre de Grace, Maryland 21078 | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| LIBERTY LIFE ASSURANCE | § | |
| COMPANY OF BOSTON | § | |
| 175 Berkeley Street | § | |
| Boston, Massachusetts 02116 | § | |
| | § | |
| and, | § | |
| | § | |
| LINCOLN LIFE ASSURANCE | § | |
| COMPANY OF BOSTON | § | |
| 175 Berkeley Street | § | |
| Boston, Massachusetts 02116 | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

**COMES NOW**, Plaintiff Robert Schwartz and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendant's other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

1

## JURISDICTION AND VENUE

1. This Court's jurisdiction over the Plaintiff's claims for long term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 5-2(e)).

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq*., and the subject disability benefit plans constitutes a "plan under ERISA."

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2569.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

4. In this case, the aforementioned avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

5. Venue is proper within the District of Maryland pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

6. Plaintiff, Robert Schwartz (hereinafter "Plaintiff"), was at all relevant times, a resident of the City of Havre de Grace, County of Harford, State of Maryland.

7.  The Plaintiff was employed by Siemens Corporation since August 21, 2006, at its location at 2520 Lord Baltimore Drive, Baltimore, Maryland 21244.

8.  Plaintiff alleges upon information and belief that Siemens Corporation Group Insurance and Flexible Benefits Program (hereinafter "Plan") is, and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA.

9.  The Plan provides eligible employees with disability income protection as defined by the Plan.

10. Plaintiff alleges upon information and belief that Siemens Corporation (hereinafter "Siemens") is the Plan Sponsor and Plan Administrator of the long-term disability Plan.

11. Siemens and/or the Plan additionally maintained or contained other benefits and/or component plans under which Plaintiff may be entitled to benefits if found disabled under the long-term disability Plan.

12. Plaintiff alleges upon information and belief that Liberty Life Assurance Company of Boston (hereinafter "Liberty") initially managed the long-term disability Plan.

13. Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston (hereinafter "Lincoln").

3

14. Liberty is the party obligated to pay benefits and to determine eligibility for benefits under the Plan.

15. Lincoln is the party obligated to pay benefits and to determine eligibility for benefits under the Plan.

16. Liberty is the underwriter for Group Policy Number GF3-850-510101-01.

17. Lincoln is the underwriter for Group Policy Number GF3-850-510101-01.

18. Liberty is an insurance company authorized to transact the business of insurance in this State, and may be served with process at its home office located at 175 Berkeley Street, Boston, Massachusetts 02116.

19. Lincoln is an insurance company authorized to transact the business of insurance in this State, and may be served with process at its home office at located at 175 Berkley Street, Boston Massachusetts, 02116.

## FACTS

20. Defendant Liberty was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan.

21. Defendant Lincoln was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan.

22. The long-term disability Plan is fully insured by Liberty under Group Policy Number GF3-850-510101-01.

23. The long-term disability Plan is fully insured by Lincoln under Group Policy Number GF3-850-510101-01.

24. The Plaintiff timely filed an application for benefits under the Plan, was subsequently denied benefits, Plaintiff timely appealed, and Lincoln issued its final denial on March 12, 2019 and/or March 13, 2019.

25. The Plaintiff was employed as an Area Sales Professional for Siemens since August 21, 2006, at its location in Baltimore, Maryland, and as such, Plaintiff was thereby a participant or beneficiary of the Plan, and is covered by the policy that provides benefits under the Plan.

26. The Plaintiff ceased work on or about December 5, 2017, due to a disability while covered under the Plan.

27. The Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

28. In accordance with the review procedures set forth in the Plan, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required plan appeals.

29. Having submitted his appeal, and as confirmed by Lincoln, Plaintiff exhausted his administrative remedies.

30. Based on the terms of the insurance policy, Plaintiff's complaint is timely and is not otherwise time barred.

31. Plaintiff is entitled to long term disability benefits as he has met the long-term disability Plan's requirements, and his disability continues to prevent him from performing the material and substantial duties of his own occupation and from performing, with reasonable continuity, the material and substantial duties of any occupation.

32. If disabled pursuant to the terms of the policy, Plaintiff, who was paid two months of long-term disability benefits (June and July of 2018), is entitled to a monthly gross long-term disability benefit of $15,000.00 offset by a Social Security disability benefit of $3,000.00 (there are no auxiliary beneficiaries) starting in October 2018, for a net monthly long-term disability benefit of $15,0000.00 from August 5, 2018 to September 5, 2018, and a net monthly long-term disability benefit of $12,000.00 from October 5, 2018 to June 5, 2020, such that he is entitled to 22 months of back benefits, with no overpayment owed, for a total long-term disability benefit of $270,000.00.

33. In a March 12, 2019 letter, Lincoln admitted Plaintiff's own occupation required moderate to high levels of oral and written comprehension and expression, inductive and deductive reasoning, fluency of ideas, problem sensitivity, category flexibility, information ordering, memorization, originality, organizing, planning, prioritizing work, and making decisions and solving problems.

34. Evidence submitted by Plaintiff to Liberty and Lincoln supporting his disability includes, *inter alia*, the following: medical evidence indicating the Plaintiff suffers from bipolar II disorder and an anxiety disorder with obsessive-compulsive features; evidence indicating that Plaintiff's 27-year old son has cerebral palsy with a cognitive level of a 1 year old and his wife is a paraplegic; an April 9, 2018 opinion from Efim Weinman, M.D., indicating Plaintiff continues to struggle with concentration and exhibits consistent obsessive thoughts and compulsive behavior and could not work; an opinion from Allen Kleinberg, M.D., dated on or about November 1, 2018, indicating the Plaintiff struggled with anxiety and organizational functioning in multiple aspects of his life; opinions from Janet Williams, LSCW-C, on December 26, 2017, February 28, 2018, May 8, 2018, and November 13, 2018, indicating, *inter alia*, the Plaintiff had difficulty making decisions and performing executive functions, that Plaintiff would have great difficulty returning to his former position at Siemens or a similar sales position, and that if he returned to work it would likely result in increased anxiety and panic attacks as well as difficulty performing daily tasks; and evidence indicating that Plaintiff's impairments required him to take frequent and unpredictable rest breaks, causes chronic absenteeism during any work environment, and caused him to be off-task more than ten percent (10%) of any given workday.

35. Job preclusive vocational limitations include, *inter alia*, needing additional, unscheduled work breaks, chronic absenteeism, and being off task more than 10% of the work period. *Johnson v. Saul*, 2019 WL 6876012, at *3 (E.D.Mo., 2019); *Ricardo C. v. Saul*, 2019 WL 4034484, at *2 (N.D.Ill., 2019); *Hicks v. Commissioner of Social Security*, 2016 WL 2605234, at *4 (E.D.Mich., 2016); *Mershad v. Commissioner of Social Security*, 2016 WL 659307, at *12 (S.D.Ohio, 2016); *Coffman v. Commissioner of Social Security*, 2015 WL 9311522, at *3 (E.D.Mich., 2015); *Williams v. Commissioner of Social Sec.*, 2013 WL 3771381, at *6 (E.D.Mich., 2013).

36. Bipolar disorder involves cognitive impairment, even when the bipolar individual is going through a phase that does not involve psychiatric symptoms. A well-reviewed neuropsychology textbook provides a summary of scientific findings. Morgan JE, and Ricker JH. *Textbook of Clinical Neuropsychology*, 2nd Edition. Taylor & Francis, 2017. These scientific findings have revealed the following: bipolar illness has been associated with cognitive impairment, even when the bipolar individual is not experiencing psychiatric symptoms such as depression or mania; the cognitive impairment that is associated with bipolar disorder includes impaired attention, working memory, verbal learning, memory, executive functions, social cognition, and cognitive processing of emotions; cognitive difficulties in bipolar illness

occur later in life after the onset of the psychiatric aspects of the illness; cognitive difficulties in bipolar illness worsen as the individual ages; bipolar disorder patients with later onset (such as the Plaintiff in the instant matter) demonstrate more impairment relative to those with early onset; cognitive impairment contributes to disabilities in social and occupational functioning and ability to live independently; and cognitive functioning was the strongest predictor variable for employment.

37. Bipolar disorder worsens over time.  Peters A, Sylvia LG, Magalhães PV, Miklowitz DJ, Frank E, Otto MW, Hansen NS, Dougherty DD, Berk M, Nierenberg AA, Deckersbach T. Age at Onset, Course of Illness and Response to Psychotherapy in Bipolar Disorder: Results from the Systematic Treatment Enhancement Program for Bipolar Disorder (STEP-BD), Psychol Med. 2014 Dec; 44(16):3455-67. The referenced article provides a list of scientific projects which revealed that bipolar disorder worsens over time.  For example, this passage from the article explains that the fact that bipolar disorder worsens over time has been known for more than a century (as indicated by the reference to "Kraepelin"), and scientific confirmation of this fact has been replicated multiple times: "Bipolar disorder is a chronic and debilitating illness, characterized by episodes of mania and/or depression. Kraepelin first noted that the course of bipolar disorder tends to worsen over time, a finding

9

that has been replicated (Zis et al. 1980; Roy-Byrne et al. 1985; Kessing et al. 1998; Rosa et al. 2012)."

38. On January 31, 2018, Leslie Kurt, M.D., American Board of Psychiatry and Neurology, a medical consultant for Liberty and Lincoln in their review of Plaintiff's short-term disability eligibility, indicated the Plaintiff's psychiatric diagnoses did not appear to be directly related to work but, instead, it appeared that his worsening psychiatric condition began to interfere with his ability to perform his job at his usual baseline.

39. An ability to perform the main duties and/or material and substantial duties of any fulltime occupation requires reliability, consistency, substantial capacity, psychological stability, and steady attendance. *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980); *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1236 (11th Cir. 2006); *McIntyre-Handy v. APAC Customer Services, Inc.*, 2005 WL 5369158, *6 (E.D. Va. 2005); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

40. Lincoln relied on medical consultants for file reviews during the administrative appeal of Plaintiff's disability claim and said consultants opined, *inter alia*, that Plaintiff had minor impairments, that he chose not to work, that his symptoms were a work environment specific issue, and his impairments had no meaningful impact on his functionality without

addressing his work reliability, consistency, substantial capacity and steady attendance.

41. Lincoln relied, *inter alia*, on third party vendors, including Dane Street (Hope Beatte, M.D.) and MES Peer Review Services (David P. Yuppa, M.D.), to conduct medical file reviews.

42. Dane Street enters into Administrative Service Agreements ("ASA") with insurers like Lincoln.  In those ASA's, Dane Street promises that it can create Management Reports on a monthly and quarterly basis that lists information for short-term disability and long-term disability claims.  The reports track data on activity, performance, and outcome, including the ultimate outcome of the medical record review.  This permits insurers like Lincoln to have the ability to track the result of every claim in which it retains Dane Street to provide a medical record review.

43. Dane Street can also provide a list of medical record reviewers who have previously provided reviews for insurance companies.  It sends these reports to insurers who can then identify "repeat players" who were instrumental in helping deny disability claims.

44. Dane Street's bias goes further.  Courts have noted Dane Street's history of bias and that it is "known to render biased opinions on the ultimate issue of disability."  This is done "to reduce benefit payouts, thereby satisfying their

clients and resulting in increased profits for themselves." *Davidson v. Ascension Long-Term Disability Plan*, Case No. 4:17-cv-995 (E.D. Missouri, October 16, 2017).

45. Dane Street's lack of credibility can also be seen in the similarity in the language of its physician's reports; a court has called a similarity in language between four Dane Street physician reports "concerning" and a possible indication of procedural irregularity. *Heartsill v. Ascension Health Alliance*, Case No. 17-cv-00155 (E.D. Missouri, July 11, 2017).

46. In *Karen Jones v. Unum Life Insurance Company of America*, Case No. 1:19-at-00655 (N.D. Cal.) (Dkt. Nos. 1 and 1-1), evidence demonstrated that Dane Street altered a medical consultant's report to be presented to Unum in opposition to plaintiff Jones' claim for benefits.

47. MES Peer Review Services works for disability insurance companies like Liberty and Lincoln. For example, with respect to file reviews and payment for services, MES Peer Review Services was retained by Hartford Life and Accident Insurance Company in *Stroot v. Hartford*, Case No. 6:18-cv-01274-JWB-TJJ (D. Kan. 2018), and from March 2017 through January 2018, Hartford paid MES Peer Review Services $1,451,220.25.

48. In 2012 MES Peer Review Services denied about 70% of the claims The Prudential Insurance Company of America sent to it for review as indicated

on page 4 of the deposition of Adam Garcia, one of Prudential's Project Managers, in *Eisner v. Prudential Ins. Co. of Am.*, Case No. 12-CV-01238-JST (N.D. Cal. 2012).

49. Liberty and Lincoln had authority under the policy to require Plaintiff to submit to an independent medical examination by a physician of their own choosing.  They failed to do so.  Non-examining psychiatric evidence has little value. As stated in *Sheehan v. Metropolitan Life Insurance Co.*: "Courts discount the opinions of psychiatrists who have never seen the patient for obvious reasons. Unlike cardiologists or orthopedists, who can formulate medical opinions based upon objective findings derived from objective clinical tests, the psychiatrist typically treats his patient's subjective symptoms…when a psychiatrist evaluates a patient's mental condition, a lot of this depends on interviewing the patient and spending time with the patient, a methodology essential to understanding and treating the fears, anxieties, depression, and other subjective symptoms the patient describes." 368 F.Supp.2d 228, 255 (S.D.N.Y. 2005). *See also*, *Kenny v. Life Ins. Co. of N. Am.*, 772 F. Supp. 2d 750, 756 (W.D. Va. 2011).

50. The Plaintiff has now exhausted his required administrative remedies for his long-term disability benefits under the Plan pursuant to ERISA or such

administrative remedies are deemed exhausted and/or his long-term disability benefits are deemed denied.

51. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

52. The entity that chose to deny long term disability benefits would pay any such benefits due out of its own funds.

53. Defendant Liberty was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

54. Defendant Lincoln was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

55. Defendant Liberty allowed its concern over its own funds to influence its decision-making.

56. Defendant Lincoln allowed its concern over its own funds to influence its decision-making.

57. Defendants have acted under a policy to take advantage of the potential applicability of ERISA to claims.

58. Defendants' administrative process did not provide Plaintiff with a full and fair review; by way of example, their denial letters did not contain the specific

reasons for the denial and did not advise Plaintiff of the information Defendants required in order to approve his continuing benefits.

59. The disability insurance policy does *not* provide Liberty with discretionary authority.

60. The disability insurance policy does *not* provide Lincoln with discretionary authority.

61. At all times relative hereto, Liberty has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from Liberty's own assets with each payment depleting those same assets.

62. At all times relative hereto, Lincoln has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from Lincoln's own assets with each payment depleting those same assets.

63. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, Liberty is an ERISA fiduciary.

64. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, Lincoln is an ERISA fiduciary.

65. Under ERISA, a fiduciary must carry out its duties with respect to the plan solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent individual acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

66. Liberty failed to satisfy its duties under ERISA as specified in paragraph 65 of this complaint.

67. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 65 of this complaint.

68. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

69. Liberty failed to satisfy its duties under ERISA as specified in paragraph 68 of this complaint

70. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 68 of this complaint.

71. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or

continuation as well as that which tends to favor claim declination or termination.

72. Liberty failed to satisfy its duties under ERISA as specified in paragraph 71 of this complaint

73. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 71 of this complaint.

74. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and to resolve undeterminable issues in its insured's favor.

75. Liberty failed to satisfy its duties under ERISA as specified in paragraph 74 of this complaint

76. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 74 of this complaint.

77. Under ERISA, a fiduciary has the obligation to read, interpret and understand all of the pertinent medical information with sufficient clarity so as to be able to make a fair, objective and thorough evaluation of its insured's claims for disability benefits.

78. Liberty failed to satisfy its duties under ERISA as specified in paragraph 77 of this complaint

79. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 77 of this complaint.

80. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

81. Liberty failed to satisfy its duties under ERISA as specified in paragraph 80 of this complaint

82. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 80 of this complaint.

83. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

84. Liberty failed to satisfy its duties under ERISA as specified in paragraph 83 of this complaint

85. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 83 of this complaint.

86. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

87. Liberty failed to satisfy its duties under ERISA as specified in paragraph 86 of this complaint

88. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 86 of this complaint.

89. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

90. Liberty failed to satisfy its duties under ERISA as specified in paragraph 89 of this complaint

91. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 89 of this complaint.

92. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

93. Liberty failed to satisfy its duties under ERISA as specified in paragraph 92 of this complaint

94. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 92 of this complaint.

95. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

96. Liberty failed to satisfy its duties under ERISA as specified in paragraph 95 of this complaint

97. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 95 of this complaint.

98. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

99. Liberty failed to satisfy its duties under ERISA as specified in paragraph 98 of this complaint

100.   Lincoln failed to satisfy its duties under ERISA as specified in paragraph 98 of this complaint.

**CAUSE OF ACTION**
**FOR PLAN BENEFITS AGAINST ALL DEFENDANTS**
**PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)**

**PLAINTIFF** incorporates all the allegations contained in paragraphs 1 through 100 as if fully stated herein and says further that:

101.   Under the terms of the Plan, Defendants agreed to provide Plaintiff with long term disability benefits in the event that Plaintiff became disabled as defined in the Plan.

102.   Plaintiff is disabled under the terms of the Plan.

103.   Defendants failed to provide benefits due under the Plan, and this denial of benefits to Plaintiff constitutes a breach of the Plan.

104.   The decision to deny benefits was wrong under the terms of the Plan.

105.   The decision to deny benefits and decision-making process were arbitrary and capricious.

106.     The decision to deny benefits was not supported by substantial evidence in the record.

107.     The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

108.     The appellate procedures did not provide the Plaintiff a full and fair review.

109.     As an ERISA fiduciary, the Defendants owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

110.     The Defendants violated the fiduciary duties owed to the Plaintiff.

111.     As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability and in failing to provide a full and fair review of the decision to deny benefits, Plaintiff has been damaged in the amount equal to the amount of benefits to which Plaintiff would have been entitled to under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan.

112.     As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has

suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## **<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff requests that this Court grant him the following relief in this case:

1. A finding in favor of Plaintiff against Defendants;

2. Damages in the amount equal to the disability income benefits to which he was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring Defendants to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan;

5. An Order requiring the Defendants and/or Plan to provide Plaintiff with any other benefits to which he would be entitled pursuant to a finding that he is disabled under the Plan;

6. Plaintiff's reasonable attorney fees and costs; and

7. Such other relief as this Court deems just and proper.

Dated this 27th day of August, 2021.

BY: */s/John P. Hotz*
JOHN P. HOTZ, ESQ., Bar 18809
**H&H LAWWORKS, LLC**
One Research Court, Suite 450

Rockville, MD 20850
(240) 403-2693
John@HHLawWorks.com

D. SETH HOLLIDAY, ESQ.
(to be admitted *pro hac vice*)
**MCMAHAN LAW FIRM, LLC**
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118
Sholliday@mcmahanfirm.com

*Attorneys for Plaintiff*